Chancellor Rutledge
afterwards delivered the decree 'of the court:
In this case there are several questions for the considé-ratióri of the court. The first is, the construction to be given to Allowing clause of the testator’s will. I gibe to my son Jámes, &c. audit is admitted by defendant that at a period subsequent to the execution of the will, the testator in his own hand writing, at the end of the clause, has interlined the following words — “ in addition to the one hundred.’’’’ When the interlining was made is not known, but it is supposed to be after the testator’s return from England; The question is as to the construction to be given to the foregoing clause, with the addition of the Words above mentioned.
If the property mentioned in the clause’ had been real estate, there could be no doubt but that the alterations made by testator would have been ineffectual, as there was no republication of the will agreeable to law; but it being personal estate, over which the testator’s power is free from many of the restraints imposed by law on real estate, and the alteration being made by the testator with his own hand, there can be no doubt that it is valid, and may justly be considered as a new modification, of the bequest of that property, not altering the bequest as it regards the estate previously given, but extending testator’s bounty by giving one hundred negroes to his son, independent of those particularly mentioned.
*545 According to the rules oí construction, every clause, and every word of the will must be so construed as to effectuate the testator’s intent, if it is consistent with the rules of law. By the addition of the words at the end of the clause, it is evidently the testator’s intent that his son James should take the negroes specially bequeathed over and above the one hundred : and as such his intent is not inconsistent with any rules of law, it must prevail. Indeed it is admitted that the testator had increased his personal property since the making of his will, by purchasing a considera,-ble number of negroes ; it is therefore presumable that might have induced him to make the alteration in the bequest above mentioned.
With respect to the construction of the word ‘ families,5 we think it best to restrain it to the wives and children of the slaves Ben and Cato, living in the house with them, for as much as testator has himself in the foregoing part of the bequest of Murriah and her sister, confined it to their children, and not extended it to their grandchildren.
As to any inequality that may arise among testator’s children by the construction which we give to this clause, we cannot prevent it, nor is the argument of much weight, seeing that testator himself has not regarded -it in his bequests, having given to his daughter 70 slaves, and to his son 100 slaves, and none particularly to the two youngest children, (tho’ there is a large surplus left for them.)
With regard to the contract for building the machines mentioned in the bill and answer, the debt incurred by testator for the lands purchased from Wm. Loughton Smith, and the remaining debts of the estate, the court are of opinion that after the application of the property specially provided in the will for the payment of the debts, and of the crops of the last and present year, the debts above mentioned must be paid out of -the residuary estate. The real and personal property purchased by the testator after making his will, must be distributed according to law. And lastly, that the costs be paid out of the estate.