16760

STEVENS v. ROYALLS *ET AL.*

(77 S. E. (2d) 198)

Mr. H. T. Abbott, of Conway, for the Appellant,

Messrs. H. H. Woodward, of Conway, and J. Reuben Long, of Conway, for Respondent, Drome Johnson, an infant,

512

July 8, 1953.

STUKES, Justice.

W. D. Stevens, late of Horry County, procured the preparation and typing of his will on June 2, 1947, and duly executed it in the presence of three witnesses. After bequest of his personal property to his wife, subject to payment of debts and funeral expenses, and five per cent of the net personal estate to Connie Maxwell Orphanage, he devised to her in fee a small acreage of land, adjoining her land, upon which his tobacco barns are situate and the residue of his real estate to her, with the privilege of use of sufficient timber for the upkeep of the buildings and payment of taxes, if necessary, quoting, "until 1956, at which time Droome (Drome) Johnson will become twenty-one (21) years of age," when the land should pass to the said Droome (Drome) Johnson, upon certain conditions and limitations which it is unnecessary to state.

The limitation upon this devise to testator's wife and the devise to Johnson, which followed in the same sentence, began in the fifth line of item 4 of the will and continued through item 5. After the death of testator on February 2, 1949, the will was filed for probate and the provisions of it, to which reference has just been made and which began with the above quotation, had been stricken by the drawing of single lines with pen through the typing, but the latter is entirely legible.

Along the wide left margin of the two margin-ruled pages of the will was written with pen the following: "I do hereby cancel a portion of this will Droom Johnson is to have $200-.00 cash Dec. (1958) Given him no land no other property other items herein not canceled in this will shall be permanent. The land herein of my estate described in item 4 not

sold shall be the property of my wife Alma Stevens all and singler this 2nd July 1948 W. D. Stevens (L.S.)/Witness W. A. Royals."

Drome, referred to in the will as Droome, Johnson is the minor child, but oldest son, of Harvey C. Johnson who was adopted at an early age and reared by testator. He and the heirs at law demanded proof of the will in solemn form and all of the heirs at law of the testator were made parties to the proceeding in the Probate Court which tried the issues of the validity of the will and the form in which it should be admitted to probate, whether or not with the purported alterations. From the resulting judgment the widow of testator has alone appealed; she has remarried, as indicated in the above caption.

The testimony of the draftsman, who was one of the witnesses, and one of the other witnesses to the will established the due execution and the mental capacity of the testator, and that upon execution none of the alterations existed, nor the handwriting on the margins of the pages which is quoted above. The third witness to the will could not be located at the time of the hearing.

The witness to the marginal writing, Royals, was a young nephew of the testator, who was about thirteen or fourteen years old at the time. The effect of his testimony was that, passing the home of testator and his wife, the latter called him in and testator said he was making some changes in his will which he wanted the witness to sign; the writing was already done and testator had signed it before arrival of the witness; no one else was present, testator's wife being in the kitchen. At the direction of testator, the witness signed on both pages. There was no other testimony thereabout; the appellant, widow of the testator, did not testify.

A rather full decree was rendered by the Probate Court which recited the proceedings which have been stated. It was concluded that the provisions of the crudely attempted alterations could have had effect only as a codicil to the

will and for lack of the formalities required by the statute are invalid. Section 8921 of the Code of 1942, now Section 19-221 of the Code of 1952, was cited, and the will as originally executed was admitted to probate in due form of law. The statute is here reproduced from the 1942 Code:

"8921. *Wills revoked only by writing or by being destroyed by testator.*—No will or testament, in writing, of any real or personal property or any clause thereof, shall be revocable but by some other will or codicil in writing, or other writing declaring the same, attested and subscribed by three witnesses as aforesaid, or by destroying or obliterating the same by the testator himself, or some other person in his presence, and by his directions and consent."

The widow of testator, who was also named executrix of the will, appealed to the Court of Common Pleas upon exceptions to the decree of the Probate Court, of which notice and grounds were served. After recited careful review of the record and exceptions, the court affirmed the decree of the Probate Court by formal order dated August 7, 1952.

The appeal to this court was upon six exceptions from which appellant's counsel has stated four questions in the brief but his main contention is that the alterations in the executed will amounted to a revocation *pro tanto*, which is authorized by the statute. The fatal weakness of this contention is that here the testator attempted more than the revocation of a specific devise or bequest which would ordinarily be a valid revocation *pro tanto* under statutes such as ours. The applicable rule is set forth in 57 Am. Jur. 353, in the following excerpt from Sec. 508, Wills:

"There is a distinction between modifying a will on its face and revoking a testamentary disposition by cancelation, obliteration, or other act manifest on the instrument. Expressions of an intent merely to change a will are not to be regarded as indicating an intent to revoke it. To revoke a testamentary disposition is to annul it, so that in legal contemplation it ceases to exist and becomes as inoperative as if it had never been written. But where, by the substitution

of certain words for others, a different meaning is imparted, there is something more than a revocation. There is a transmutation by which a new clause is created. There is another and a different testamentary disposition, which, to have validity, must be authenticated by the observance of the statutory requirements for the execution of wills. Even though a will may be revoked in part, this doctrine is not extended so as to sustain a will which is obliterated in such a manner as to impart a different meaning to other portions thereof. Such is not a mere revocation; it is an alteration—a new and distinct testamentary disposition—which must be authenticated in the manner required for the execution of a will in order to be effective. Obviously, every erasure of an effective part of a will constitutes a change in the testamentary disposition. Nevertheless, the courts, in deciding whether a will must be reattested after the making of the erasure, draw a distinction between an erasure which merely indicates an intention to expunge a clause or portion of the will and one which gives a new meaning to the words not erased. In the latter case, but not in the former, a reattestation is required. The general rule, therefore, is that when an attempt has been made by erasure or obliteration to make a different disposition of the estate, the attempt will be abortive if made without the attestation required by law, and the will as originally drawn will be given effect."

Digests of numerous supporting authorities may be found in the annotations in 38 L. R. A., N. S., 797, 62 A. L. R. 1367 and 24 A. L. R. (2d) 514. It was said by the editor of the last cited annotation at page 518 of 24 A. L. R. (2d), and to the same effect at page 545, as follows: "It is to be noted that alterations involving only the elimination of material from the will relate particularly to the revocation of the parts constituting such material, while those involving the appearance of new dispositive words or figures partake of the nature of additions, which generally require formal execution in order to be effective."

Cited in the footnotes to the above quotation from Am. Jur. is our early decision of *Pringle v. M'Pherson,* 2 Brev. 279, 3 Am. Dec. 713. In that case there were held invalid for lack of republication conceded alterations by testator of his will whereby he struck out the exception of three hundred acres from the devise of a large plantation and, correspondingly, also struck a separate devise of the three hundred acres to another. The court pointed out that the result was the revocation of the latter but also the enlargement of, or addition to, the former devise, all of which failed because of non-observance of the statutory formalities for the execution of a will or codicil. In the opinion of the court it was said, as follows: "The correct rule, I take to be that laid down in argument, namely, whatever alters either the quality or quantity of an estate devised, renders it a new devise, and requires a new publication." The effect of the facts of this old (1809) case is closely parallel to the result of the attempted alterations of the will in the case at hand.

*Brown v. Brown,* 91 S. C. 101, 74 S. E. 135, 136, clear and concise opinion by Mr. Justice Woods, is an example of valid revocation *pro tanto.* Four specific bequests in the will were stricken out and the testator attached a signed memorandum that he had made the erasures after execution of the will. Revocation of the stricken legacies was upheld although the portion of the estate which passed under the residuary clause was thereby increased, but this was said to be a merely incidental consequence which resulted from the exercise of the power to revoke which was conferred by the statute and was not a new testamentary disposition. It was further said in the opinion: "True the statute cannot be extended so as to make an additional specific devise or bequest by mere obliteration of clauses of the will; for that would be making a testamentary disposition of property without the formalities required for such disposition."

The changes in the will as executed in the case at bar were plainly more than the revocation of a devise, or revocation *pro tanto.* If given effect, they

would substitute in appellant the apparent fee of the land for her former estate for years; and substitute a bequest of money to Johnson in place of the devise of the land to him. So far as the land involved is concerned, there would be a new will; and so with the bequest of money to Johnson. Affirmance of the conclusions of the lower courts necessarily follows.

Appellant's first three questions are disposed of adversely to her by what has been said. The fourth and last which she argued is that the Court of Common Pleas erred, quoting, "in holding that the Probate Court could inquire into the validity of the revocation * * *." The exceptions or grounds of appeal from the Probate Court to the Court of Common Pleas, and from that court to this, do not make the point, and it will not be considered on the merits. Admittedly, the Court of Common Pleas could make such inquiry, and it did upon the testimony taken in the probate court, its decree and the grounds of appeal therefrom. Error of procedure, if any and which we do not determine, was harmless and was fully acquiesced in by appellant. Her brief upon appeal here contains the first intimation of objection. The procedure was the same as that which appears to have been followed, also without objection, in *Guerin v. Hunt,* 118 S. C. 32, 110 S. E. 71, which was a controversy as to whether alterations in the will there were made by testator before or after the execution of it.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.