/s/ Ernest A. Finney, C.J.
/s/ Jean H. Toal, A.J.
/s/ James E. Moore, A.J.
/s/ John H. Waller, Jr., A.J.
/s/ E.C. Burnett, III, A.J.

24272

In the Matter of Twila DECKER, Appellant. In re the STATE, Respondent v. Susan SMITH, Respondent.

(471 S.E. (2d) 462)

Supreme Court

*Jay Bender* and *Charles E. Baker* of *Baker, Barwick, Ravenel* and *Bender,* Columbia, *for appellant.*

*Atty. Gen. Charles Molony Condon, Deputy Atty. Gen. John W. McIntosh, Asst. Deputy Atty. Gen. Salley W. Elliott* and *Asst. Atty. Gen. G. Robert Deloach, III,* Columbia, and *Sol. Thomas E. Pope,* Rock Hill, *for respondent, State of South Carolina.*

*David I. Bruck* and *Judy Clarke,* Columbia, *for respondent, Susan Smith.*

*Cheryl Perkins,* Columbia, and *Jane E. Kirtley* and *Daniel E. Katz,* Arlington, VA, *for amici curiae, Reporter's Committee for Freedom of the Press* and the *South Carolina Press Ass'n.*

Heard July 6, 1995.

Refiled July 11, 1995.

*Per Curiam:*

Twila Decker, a reporter for *The State* newspaper, appeals a circuit court order holding her in civil contempt. We affirm.

## FACTS

This case involves a newspaper article written by Decker about Susan Smith, who is charged with the murder of her two children. By order of the circuit court on March 23, 1995, Smith was ordered to submit to a psychiatric evaluation by the South Carolina Department of Mental Health (DMH). Due to extensive pretrial publicity, the circuit court issued an order on May 16, 1995 requiring the report be disclosed only to defense counsel and the solicitor, both of whom were ordered to maintain the confidentiality of the report.[1] They were not permitted to divulge the contents to any witness whose knowledge was not essential; disclosure "to any other party or individual prior to trial" was prohibited.

On May 25, 1995, *The State* published an article written by Decker which purported to summarize portions of DMH's psychiatric evaluation of Smith. The following day, the court conducted a hearing to determine the source of Decker's information. The court concluded that only four entities had had access to the report: the DMH, the 16th Circuit Solicitor, Smith's defense counsel, and the court itself. The court took the testimony of the DMH's Chief of Public Safety, Freddie Lorick, who had conducted an investigation and testified that "there was not a breach of confidentiality on the part of the DMH or its employees in this case." The court then heard from Solicitor Pope who, as an officer of the court, advised that only three people in his office had viewed the report and none of them had breached confidentiality. Defense counsel submitted an affidavit indicating that the defense team was not the source of any "leaks." Finally, the court ascertained that its office was not the source of any breach.

Unable to ascertain the source of the breach of confidentiality, the trial judge called Decker as a witness. Decker acknowledged she had a contract with a confidential source who had provided her with information relative to the report, but she refused to reveal the source, citing the First Amendment to the United States Constitution, and the South Carolina "Reporter's Shield Law." S.C. Code Ann. § 19-11-100 (Supp. 194). When Decker refused to reveal her source, the circuit

---

[1] The report is also required to be kept confidential pursuant to S.C. Code Ann. § 44-22-100 (Supp. 1993).

court held her in contempt of court and ordered her incarcerated, provided that she could purge the contempt by revealing the identity of the confidential source. This court stayed imposition of the contempt sanction pending disposition of this appeal.

## ISSUES

1. Does the South Carolina Reporter's Shield Law provide Decker a qualified privilege to withhold her confidential source?
2. Does the First Amendment to the United States Constitution grant Decker a privilege to withhold her confidential source?

## I. *REPORTERS SHIELD LAW*

S.C. Code Ann. § 19-11-100 (Supp. 1994) provides, in pertinent part:

> (A) A person . . . engaged in the gathering and dissemination of news for the public through a newspaper . . . has a qualified privilege against disclosure of any information . . . obtained . . . in the gathering or dissemination of news in any judicial . . . proceeding in which the compelled disclosure is sought and where the one asserting the privilege is not a party in interest to the proceeding.
> (B) The person . . . may not be compelled to disclose any information . . . obtained . . . in the gathering or dissemination of news unless the **party seeking to compel** the production or testimony establishes by clear and convincing evidence that . . . the testimony or production sought:
>
> (1) is material and relevant to the controversy for which the testimony or production is sought;
>
> (2) cannot be reasonably obtained by alternative means;
>
> (3) is necessary to the proper preparation or presentation of the case of a party seeking the information. . . .

On its face, the reporter's shield law is inapplicable to the present case. A party is a person whose name is designated on the record as a plaintiff or defendant. *Bergsieker v. Schnuck Markets, Inc.*, 849 S.W. (2d) 156, 165 (Mo. App. 1993). Here, the disclosure of Decker's source is

sought by the trial court, clearly not a party to the underlying proceedings. "A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous. . . ." 82 C.J.S. *Statutes* § 346. *See also Savannah Bank & Trust Co. of Savannah v. Shuman*, 250 S.C. 344, 157 S.E. (2d) 864 (1967). Had the legislature intended the statute to apply in circumstances in which the trial court seeks disclosure, it would not have limited application of the statute to circumstances where a "party" seeks to compel production. Accordingly, we find the reporter's shield law inapplicable.

Moreover, the purpose of the reporter's shield law, as set forth in the preamble, is as follows:

> Whereas, the General Assembly finds that it is vital in a democratic society that the public have an unrestricted flow of information on **matters of concern to the public** and that the threat of compelled testimony or production of information . . . obtained . . . in gathering or disseminating news to the public interferes with the free flow of information to the public.

Act No. 138, 1993 S.C. Acts 391. (Emphasis supplied.) As noted previously, the mental health report, which was ordered by the trial judge pursuant to S.C. Code Ann. § 44-23-410 (Supp. 1994),[2] is required by law to be kept confidential. S.C. Code Ann. § 44-22-100 (Supp. 1994). Section 44-22-100 provides that reports made for the purpose of Chapter 23 identifying a mentally ill patient must not be disclosed absent certain specified circumstances. The confidentiality requirement of section 44-22-100 apples with equal force regardless of whether the trial court orders the mental examination pursuant to subparagraph (1) or subparagraph (2) of section 44-23-410. Accordingly, the report is confidential pursuant to the statute. Moreover, the trial court prohibited disclosure of the report to the public. Contrary to Decker's contention, requiring her to disclose her source in no way contravenes the purpose of the reporter's shield law since the information is not public.

---

[2] This statute permits a judge to either order a person examined at a "suitable place," or to order a person committed to DMH for examination and observation.

In any event, even were we to find the reporter's shield law applicable to the present case, we find the trial court complied with the three-prong inquiry set forth therein. Contrary to Decker's assertion, the record demonstrates, by clear and convincing evidence, that the information "cannot be reasonably obtained by alternative means."[3]

The present record reveals that the trial judge made inquiry of every office known to him to have had access to the report. Uniformly, a representative of each office maintained the confidentiality of the report had not been breached by any of its employees. Contrary to Decker's assertion, the only evidence on the present record is clear and convincing that no other person known to have had access to the report disclosed it. The trial court, being unable to determine the identity of the "leak" from any other source, properly required Decker to divulge her source.

## II. *FIRST AMENDMENT*

Decker contends she has a qualified privilege, pursuant to the First Amendment of the United States Constitution, to withhold her confidential course. Under these circumstances, we disagree.

The First Amendment provides that "Congress shall make no law ... abridging the freedom ... of the press. . . ." U.S. Const. Amend. I. The core purpose of the constitutional guarantee of free speech and a free press is to inform the public. *Stromberg v. California*, 283 U.S. 359, 369, 51 S.Ct. 532, 535-36, 75 L.Ed. 1117 (1931). *See also Grosjean v. American Press Co.*, 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936) (the free press clause was designed "to preserve an untrammeled press as a vital source of public information"). It has generally been held, however, that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. *Zemel v. Rusk*, 381 U.S. 1, 16-17, 85 S.Ct. 1271, 1280-81, 14 L.Ed. (2d) 179 (1965). The press may constitutionally be prohibited from publishing information about trials if necessary to assure a fair trial by an impartial tribunal. *Sheppard v. Maxwell*, 384

---

[3] Decker raises no contention that the first and third prongs of the statute are not met.

U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed. (2d) 600 (1966). Consequently, the information Decker seeks to withhold is not protected by the First Amendment. Further, Decker's status as a news reporter affords her no privilege in the present case.

In *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed. (2d) 626 (1972), the United States Supreme Court held that news reporters have no First Amendment privilege, either qualified or absolute, to refuse to divulge a confidential source in the context of a good-faith grand jury investigation. *Branzburg* was a plurality opinion in which Justices White, Burger, Blackmun, Powell, and Rehnquist joined the majority. However, the *Branzburg* Court recognized that, under certain limited circumstances, news gathering is entitled to First amendment protection, such as when grand jury investigations are instituted in bad faith, or are undertaken for the purpose of harassment of the press. 408 U.S. at 707-08, 92 S.Ct. at 2670.

A number of courts, citing *Branzburg*, have adopted a first Amendment qualified privilege requiring a balancing process prior to requiring disclosure of a news reporter's confidential source. *See e.g. Zerilli v. Smith*, 656 F. (2d) 705 (D.C. Cir. 1981); *United States v. Burke*, 700 F. (2d) 70 (2d Cir. 1983), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed. (2d) 85 (1983); *United States v. Cuthbertson*, 630 F. (2d) 139 (3d Cir. 1980), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed. (2d) 594 (1981); *LaRouche v. National Broadcasting Company*, 780 F. (2d) 1134 (4th Cir.), *cert. denied*, 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed. (2d) 34 (1986); *Miller v. Transamerican Press, Inc.*, 621 F. (2d) 721 (5th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed. (2d) 238 (1981). These courts generally hold that a journalist's privilege protects confidential sources unless it is first demonstrated that the information is relevant, cannot be obtained by alternate means, and is necessary or critical to the claim. *LaRouche, supra; Cuthbertson, supra.*

However, notwithstanding the above decisions, a number of courts specifically reject the expansive reading given to *Branzburg* by other courts, and recognize that the balancing test implemented by those courts is precisely the type of approach the *Branzburg* court sought to avoid. *See Karem v. Priest*, 744 F. Supp. 136, 141 (W.D. Tex. 1990) (commenting on

Supreme Court's disapproval of *ad hoc* assessment of "importance" or "relevance" and requiring lower courts to make preliminary factual and legal determinations as to whether the proper predicate had been laid); *Matter of Farber*, 78 N.J. 259, 394 A. (2d) 330, 334, *cert. denied*, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed. (2d) 670 (1978) (recognizing that majority of Supreme Court found no First Amendment privilege); *In re Grand Jury Proceedings*, 810 F. (2d) 580 (6th Cir. 1987) (explaining precise holding of *Branzburg* and declining to adopt balancing test); *National Broadcasting v. Court of Common Pleas*, 52 Ohio St. (3d) 104, 556 N.E. (2d) 1120 (1990) (recognizing that those cases adopting a three-part balancing have essentially adopted the dissent in *Branzburg*); *Rosato v. Superior Court of Fresno County*, 51 Cal. App. (3d) 190, 124 Cal. Rptr. 427, 444 (1975) (acknowledging that *Branzburg* did not require exhaustion of alternate sources prior to obtaining reporter's sources).

Similarly, other courts acknowledge that *Branzburg* ■ stands for the proposition that the press enjoys a qualified privilege only in certain limited situations, such as when the grand jury acts in bad faith or the press is being subjected to official harassment. *See Lewis v. United States*, 517 F. (2d) 236 (1975). Finally, a number of courts recognize that a criminal trial is at least as important as a grand jury proceeding, and a defendant's right to a fair trial outweighs any claimed qualified privilege, on its face. *See Matter of Farber, supra*; *Healey v. McMeans*, 884 S.W. (2d) 772 (Tx. Cr. App. 1994); *Pennington v. Chaffee*, 1 Kan. App. (2d) 682, 573 P. (2d) 1099 (1977); *People v. Zagarino*, 97 Misc. (2d) 181, 411 N.Y.S. (2d) 494 (1978); *United States v. Liddy*, 354 F. Supp 208 (D.C. Col. 1972).

We decline to adopt the view taken by those courts which utilize the three-prong balancing approach urged by the *Branzburg* dissent. *Accord In re Grand Jury Proceedings, supra*. Accordinly, we find no First Amendment privilege in this case.[4]

---

[4] We concur in the view, however, that the press enjoys a qualified privilege in **limited** situations, such as when the grand jury acts in bad faith or the press is being subjected to official harassment. *Branzburg, supra*.

Finally, even if we were to recognize a qualified First Amendment privilege, we find any such privilege is patently outweighed in the present case by the trial court's fundamental need to be able to enforce its own orders. As was recognized by the Ninth Circuit Court of Appeals in *Farr v. Pitchess*, 522 F. (2d) 464, *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed. (2d) 1203 (1976):

> [T]he First Amendment protections announced by *Branzburg* collided head-on with a compelling judicial interest in disclosure of the identity of those persons frustrating a duly entered order of the court. . . . The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. . . . [T]he purpose of eliminating collaboration between counsel and the press is to protect the constitutionally guaranteed right of the defendants in criminal cases to due process by means of a fair trial. That constitutional right cannot be so protected if the authority of the court to enforce its orders is diluted. If the newsman's privilege against disclosure of news sources is to serve as a bar to disclosure of the names of those who disobey the court order, then the court is powerless to enforce this method of eliminating encroachment on the due-process right of the defendants.

In *Farr*, the court concluded that the newsman's privilege must yield to the more important and compelling need for disclosure and, accordingly, Farr was not constitutionally protected in his refusal to identify those who violated the order of the court. *See also Rosato v. Superior Court of Fresno County*, 51 Cal. App. (3d) 190, 124 Cal. Rptr. 427 (1975) (recognizing preeminence of right of fair trial where court seeks to ascertain source of violation of its order).

As in *Farr*, we find the need for disclosure here far outweighs any asserted First Amendment privilege. Accordingly, Decker must divulge her source or suffer the consequences of her contempt of the circuit court's order. The judgment below is

Affirmed.