Justice PLEICONES:
I respectfully dissent. I disagree with the majority that S.C.Code Ann. § 38-71-46 (2002) applies to the State Health Plan (Plan).
This case is controlled by section 38-71-46(D), which defines what “health insurance policies]” are covered under the diabetes education mandate in section 38-71-46(A).[13] Since the Plan is a group health plan, section 38-71-46(D) requires the use of S.C.Code Ann. § 38-71-840(14) (2002) to determine whether the Plan provides “health insurance coverage,” so as to be a “health insurance policy” covered by this diabetes education mandate. In my opinion, it does not.
Section 38-71-840(14) provides:
“Health insurance coverage” means benefits consisting of medical care provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care under any hospital or medical service policy or certificate, hospital or medical service plan *624 contract, or health maintenance organization contract offered by a health insurance issuer....
Ultimately, whether the Plan qualifies as “health insurance coverage” depends on what the phrase “offered by a health insurance issuer” modifies in S.C.Code Ann. § 38-71-840(14) (2002).
I read section 38-71-840(14) differently than does the majority. I read “benefits consisting of medical care provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care” as describing what types of provided benefits qualify as “health insurance coverage.” I read the next section “under any hospital or medical service policy or certificate, hospital or medical service plan contract, or health maintenance organization contract offered by a health insurance issuer” as describing what types of insuring agreements offer “health insurance coverage.” The term “offered by health insurance issuer” modifies the three types of insurance agreements in the statute, that is, (1) a hospital or medical service policy or certificate, (2) a hospital or medical service plan contract, or (3) a health maintenance organization contract. Accordingly, to qualify as “health insurance coverage” the policy, certificate, or contract must be issued by a “health insurance issuer.”
The next step is to determine whether the EIP is a “health insurance issuer.” This term is defined in S.C.Code Ann. § 38-71-840(16) (2002):
“Health insurance issuer” or “issuer” means any entity that provides health insurance coverage in this State. For purposes of this section, “issuer” includes an insurance company, a health maintenance organization, and any other entity providing health insurance coverage which is licensed to engage in the business of insurance in this State and which is subject to state insurance regulation.
I agree with the ALC’s conclusion that the EIP is not a “health insurance issuer” because the EIP is not licensed to engage in the business of insurance in this State and not subject to State insurance regulation. See S.C.Code Ann. § 1-11-780 (Supp.2013) (“[t]he State Employee Insurance Program ... is not under the jurisdiction of the Department *625 of Insurance”). Since the EIP is not a “health insurance issuer” under section 38-71-840(16), the Plan does not provide “health insurance coverage” as defined in section 38-71-840(14). Further, since section 38-71-46 only mandates diabetes education coverage for a “health insurance policy” that provides “health insurance coverage” as defined by section 38-71-840(14), I agree with the ALC that Appellant’s claim was properly denied.
Assuming, however, that we must reach the issue of intent, I would reach the same result.[14] The General Assembly has chosen to separate the Plan from general insurance regulation by placing the Plan’s governing statutes in Title 1, Chapter 11 of the S.C.Code, rather than in Title 38, Chapter 71 (General Insurance Statutes).[15] Since the General Assembly separated the Plan from the General Insurance Statutes, it has included an express reference to the Plan in the General Insurance Statutes when those statutes are to apply to the Plan. See S.C.Code Ann. § 38-71-785(B) (Supp.2013) (“This section applies ... including the state health plan ... ”); S.C.Code Ann. § 38-71-243(B) (Supp.2013) (“This section applies ... including the state health plan ... ”). Furthermore, in the context of coverage mandates, the General Assembly has made a direct reference to the Plan when it intends for a mandate found in the General Insurance Statutes to apply to the Plan. See S.C.Code Ann. § 38-71-280 (Supp.2013) (mandating coverage for autism spectrum disorder, “[i]t includes the State Health Plan ... ‘State Health Plan’ means the employee and retirees insurance program provided for in Article 5, Chapter 11, Title 1”). The diabetes education mandate, however, contains no reference to the Plan either in the text or the enacting legislation. Accordingly, I find that the General Assembly did not intend for the diabetes education mandate in section 38-71-46 to apply to the Plan.
*626 I also disagree with the majority that the separate treatment of the Plan does not evidence intent for the Plan to be treated differently. Further, I disagree with the majority’s contention that because sections 38-71-243, 38-71-280, and 38-71-785 were enacted after section 38-71-46, they cannot support the proposition that when the General Assembly intends for a General Insurance Statute to apply to the Plan, it expressly references the Plan. If a General Insurance Statute applies to the Plan even when the Plan is not mentioned, then there would have been no reason to include the express reference to the Plan in any General Insurance Statute. In construing a statute, we are to assume the General Assembly was aware of past statutes, and we are to give effect to all the words in a statute. Whitner v. State, 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997) (noting the basic presumption that the legislature has knowledge of previous legislation); Matter of Decker, 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995) (citing 82 C.J.S. Statutes § 346) (noting that courts are to give effect to all words in a statute). The majority’s reading renders the references in the later statutes superfluous and leads to the absurd result that all General Insurance Statutes apply to the Plan unless the Plan is expressly excluded.
Finally, while I am not unsympathetic to the thousands of South Carolinians who suffer from the devastating effects of diabetes, the existence of this health scourge, while tragic, is, in my opinion, of no assistance in our task of statutory construction. Therefore, I disagree with the majority’s reliance on the prevalence of a disease in determining whether a coverage mandate found in a General Insurance Statute applies to the Plan.
I would affirm the ALC’s holding that section 38-71-46 does not apply to the Plan and uphold the denial of Appellant’s claim.

. While section 38-71-46(A) states that "every health maintenance organization, individual and group health insurance policy” is covered under this mandate, section 38-71-46(D) requires that these policies provide "health insurance coverage” before this mandate is to apply. See § 38-71-46(D) ("For purposes of this section: “Health insurance policy” means a health benefit plan, contract, or evidence of coverage providing health insurance coverage as defined in Section 38-71-670(6) and Section 38-71-840(14).”).

. If the language of a statute gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the statute itself. Wade v. Berkeley County, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002).

. I reiterate that the General Assembly has specified that EIP, and correspondingly the Plan, is not subject to regulation by the South Carolina Department of Insurance. S.C.Code Ann. § 1-11-780 (Supp.2013).