FACTS/PROCEDURAL HISTORY
Appellant was charged with discharging a firearm into a dwelling, possession of a pistol by a person under the age of eighteen, possession of a stolen handgun, discharging a firearm within the city limits, and possession of a handgun with an obliterated serial number. The charges stemmed from two separate incidents during which Appellant accidentally fired a pistol while toying with it inside his bedroom. The second incident resulted in Appellant being admitted to the hospital with a self-inflicted gunshot wound to his hand. When law enforcement recovered the handgun, the serial number appeared illegible, having been marked with deep scratches and gouges; however, officers were eventually able to decipher the number and learn the gun had been stolen.
Prior to trial, Appellant pled guilty to two counts of discharging a firearm within city limits and one count of possession of a handgun by a person under the age of eighteen. The family court held a bench trial on the *209 charges of possession of a stolen handgun and possession of a handgun with an obliterated serial number. The facts were largely undisputed; the only issues were whether the serial number was "obliterated" within the meaning of section 16-23-30 of the South Carolina Code (2015) and whether Appellant knew or should have known the gun had been stolen.
The State took the position that the clear meaning of "obliterated," as used in the statute, was to "attempt to get [the serial] number to be unreadable." In support of this argument, the State submitted into evidence two pictures of the handgun, which depicted the serial number as indecipherable due to deep scratches. Although the State acknowledged "[i]t took four law enforcement officers who look at guns **484 everyday [a] significant period of time before one was finally able to decipher the serial number," it contended any reasonable person would have considered the serial number unreadable.
Appellant argued the serial number had merely been scratched and therefore was not "obliterated." Furthermore, Appellant contended that because "obliterated" is an uncommon term and not defined by statute or case law, the family court must consider alternative definitions. Citing the Oxford English Dictionary, Appellant noted the term meant "to destroy utterly, to wipe out ... annihilate, demolish, eliminate." Appellant asserted the serial number could be obliterated by means of a "grinder" to "grind it flat," but regardless, it must be "completely done away with" in order to be considered "obliterated."
Following the trial, the family court found Appellant not guilty as to the charge of possession of a stolen handgun and guilty as to the charge of possession of a handgun with an obliterated serial number. The court sentenced Appellant to a ninety-day sentence with probation for one year to follow. This appeal followed.
STANDARD OF REVIEW
"In criminal cases, the appellate court sits to review errors of law only." State v. Baccus , 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "[A]n appellate court is bound by the trial court's factual findings unless they are clearly erroneous." State v. Gordon , 414 S.C. 94, 98, 777 S.E.2d 376, 378 (2015). "A finding is clearly erroneous if it is not supported by the record." State v. Scott , 406 S.C. 108, 113, 749 S.E.2d 160, 163 (Ct. App. 2013) (quoting State v. Shuler , 344 S.C. 604, 620, 545 S.E.2d 805, 813 (2001) ). This court must affirm an adjudication of delinquency unless it is unsupported by the evidence. In re John Doe , 318 S.C. 527, 534, 458 S.E.2d 556, 561 (Ct. App. 1995).
LAW/ANALYSIS
Appellant contends the family court erred in adjudicating him guilty of possession of a handgun with an obliterated serial number, arguing the number was not obliterated because it was eventually recovered.
**485 I. Section 16-23-30
Section 16-23-30(C) of the South Carolina Code (2015) provides: "A person shall not knowingly buy, sell, transport, pawn, receive, or possess any stolen handgun or one from which the original serial number has been removed or obliterated." Neither statute nor South Carolina case law defines the term "obliterated." The family court, in determining the State carried its burden of proof, made the implicit finding that Appellant's proffered definition of "obliterated" was not what the Legislature intended when drafting section 16-23-30. Because this case raises a novel question of law regarding the interpretation of a statute, we review the family court's decision de novo. State v. Sweat , 379 S.C. 367, 374, 665 S.E.2d 645, 649 (Ct. App. 2008), aff'd as modified , 386 S.C. 339, 688 S.E.2d 569 (2010) ("In a case raising a novel question of law regarding the interpretation of a statute, the appellate court is free to decide the question with no particular deference to the lower court.").
"Penal statutes are strictly construed against the State and in favor of the defendant." State v. Morgan , 352 S.C. 359, 365, 574 S.E.2d 203, 206 (Ct. App. 2002). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." Hodges v. Rainey , 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "As such, a court must abide by the plain meaning of the *210 words of a statute." State v. Jacobs , 393 S.C. 584, 587, 713 S.E.2d 621, 622 (2011). "When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning." Morgan , 352 S.C. at 366, 574 S.E.2d at 206. In doing so, we must read the statute so "that no word, clause, sentence, provision, or part shall be rendered surplusage, or superfluous." In re Matter of Decker , 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995) (quoting 82 C.J.S. Statutes § 346 ).
In South Carolina, the construction of the term "obliterated" has been limited to cases addressing whether a portion of a will has been revoked. These cases extend from the presidency of Thomas Jefferson, through the year Woodrow Wilson was elected, all the way in to the first year of the Eisenhower Administration. See Pringle v. McPherson , 2 S.C. Eq. 524, 525 (S.C. Ch. 1807) (explaining clause in will was "obliterated; yet **486 was quite legible"); Brown v. Brown , 91 S.C. 101, 74 S.E. 135, 136 (1912) (describing as "obliterated" words in a will that "had a single pen line drawn through them, leaving them thoroughly legible"); Stevens v. Royalls , 223 S.C. 510, 512, 77 S.E.2d 198, 199 (1953) (finding a clause in a will was obliterated when it "had been stricken by the drawing of single lines with pen through the typing, but [was] entirely legible"). In those cases, a writing is sufficiently "obliterated" so long as the testator's intent to cancel or erase is apparent on the face of the will or instrument. See 95 C.J.S. Wills § 432 ("Revocation by obliterating may be effected by drawing lines across the signatures of the testator and the witnesses, as well as by erasing, or blotting out the words of the will. A will may be 'obliterated' or 'cancelled' within the meaning of a revocation statute, even though the words are not erased or blotted out to the extent that the nature of the will before the cancellation, or its provisions, cannot be discovered. A line drawn through the writing is, doubtless, obliteration although it may leave it as legible as it was before.") (citations omitted).
Although the word "obliterated" as it is used in the parlance of wills does not require the total annihilation of the object obliterated, the definitions that Appellant rely on evidently do. Appellant cites Black's Law Dictionary, which defines "obliteration" as to "destroy; wipe or rub out; erase; erasure or blotting out of written words." Black's Law Dictionary, 741 (Abridged Sixth Ed. 1991). Additionally, the American Heritage Dictionary defines the term as to "do away with completely so as to leave no trace." American Heritage College Dictionary 942 (3d ed. 1993). In Webster's Dictionary, the term means to "blot out or wear away, leaving no traces; erase; efface." Webster's New World College Dictionary 995 (4th ed. 2008). While these definitions appear to support Appellant's view that "obliterated" means something more than to scratch out, we do not believe they capture the meaning of the word as it is used in section 16-23-30. See Hodges , 341 S.C. at 85, 533 S.E.2d at 581 ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.").
Initially, we note section 16-23-30(C) uses the terms "removed or obliterated." While the term "removed" has varied applications, the definition most likely to be employed in the **487 context of a "removed" serial number would be "to take off ... to do away with; ... to get rid of; eliminate." Webster's New World College Dictionary 1213 (4th ed. 2008). Cleary, a serial number that has been ground to dust could be considered "removed or obliterated" under any of the aforementioned definitions; however, giving meaning to both words, one of them must apply to the situation when a serial number has not been completely destroyed but is still imperceptible to the naked eye. Because the word "removed" ordinarily connotes that something has been eliminated or taken off entirely, we believe the use of the word "obliterated" implies a degree of erasure that is less demanding than "removed" but sufficient to render the serial number defaced or unreadable. This interpretation gives effect to both words and does not result in a redundancy in the statute. See In re Matter of Decker , 322 S.C. at 219, 471 S.E.2d at 463 ("A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous." (quoting 82 C.J.S. Statutes § 346 ) ). Accordingly, we reject the notion that a serial number must be *211 completely erased to be considered "obliterated" under section 16-23-30.
Moreover, we are persuaded by the reasoning of federal courts that have addressed similar questions under federal firearms statutes and sentencing guidelines. Particularly, we believe the Ninth Circuit's opinion in United States v. Carter , which was the first federal appellate court opinion to construe the meaning of "altered or obliterated" in the context of a firearms offense, lays out an appropriate standard going forward. 421 F.3d 909, 910 (9th Cir. 2005). In Carter , the defendant, who was facing a sentencing enhancement for possessing a firearm with an altered or obliterated serial number, argued that because law enforcement ultimately discerned the serial number using a microscope, it could not be considered "altered or obliterated" within the meaning of the federal sentencing guidelines. Id . After consulting various dictionaries to survey the ordinary meaning of both words, the court determined the dictionary definition of "obliterated" was inconclusive and looked to the legislative purpose behind sentencing enhancements for offenses involving altered or obliterated serial numbers.
[The guideline] intends to "discourag[e] the use of untraceable weaponry." This purpose is advanced not only by punishing **488 those who possess untraceable firearms, but also by punishing those who possess firearms that are more difficult, though not impossible, to trace because their serial numbers have been defaced. As this case aptly demonstrates, it may be difficult to determine, from a visual inspection alone, whether a serial number that appears defaced is, in fact, untraceable when scientific means are employed. On the street, where these guns often trade and where microscopy is rarely available, one cannot readily distinguish between a serial number that merely looks untraceable and one that actually is. At that level it is appearances that count: A gun possessor is likely to be able to determine only whether or not his firearm appears more difficult, or impossible, to trace.
Id . at 914-15 (quoting United States v. Seesing, 234 F.3d 456, 460 (9th Cir. 2001) ). The court in Carter therefore held that for purposes of the federal sentencing guidelines, "a firearm's serial number is 'altered or obliterated' when it is materially changed in a way that makes accurate information less accessible." Id . at 910.
Following Carter , a number of other federal circuits reached substantially identical conclusions when addressing the meaning of "altered, removed, or obliterated" under the federal firearms statute or sentencing guidelines. See United States v. Hayes , 872 F.3d 843, 847 (7th Cir. 2017) (holding a serial number was "altered or obliterated" when covered with paint-like substance); United States v. Justice , 679 F.3d 1251, 1254 (10th Cir. 2012) (interpreting the federal firearms statute and holding that "obliterate" means "to make undecipherable or imperceptible by obscuring, covering, or wearing or chipping away" (quoting Webster's Third New International Dictionary 1557 (2002) ) ); United States v. Perez , 585 F.3d 880, 885 (5th Cir. 2009) (holding evidence was sufficient to show serial number "had been materially changed in a way that made its accurate information less accessible, and that it had been 'altered or obliterated' "); United States v. Jones , 643 F.3d 257, 259 (8th Cir. 2011) (adopting the Ninth Circuit's reasoning in Carter to hold that a partially defaced serial number was "altered or obliterated"); but see United States v. Harris , 720 F.3d 499, 503 (4th Cir. 2013) (holding a serial number that was marked with deep scratches but still legible **489 to be "altered" rather than "obliterated"). We find these cases instructive and similarly choose to adopt the rule espoused in Carter . Accordingly, we hold that a serial number has been "obliterated" when "it is materially changed in a way that makes accurate information less accessible." Carter , 421 F.3d at 910.
II. Sufficiency of Evidence
Having determined a serial number is "obliterated" when "it is materially changed in a way that makes accurate information less accessible," we address whether the evidence supports Appellant's conviction for possession of a handgun with an obliterated serial number. We find that it does.
Here, the family court viewed two pictures of the handgun, both showing the serial number to be scratched beyond comprehension.
*212 Appellant acknowledged the pictures accurately depicted the handgun. It follows that Appellant also assumed the serial number was unreadable and therefore untraceable. See id. at 915 ("[I]f ... a defendant cannot visually distinguish ... a would-be untraceable firearm from one that is in fact untraceable, it makes little sense for him to be punished in the latter circumstance but to escape punishment in the former."). While the family court knew police officers were ultimately able to discern the serial number, the question of whether the serial number was sufficiently marred to be considered "obliterated" was within the province of the fact-finder. Because there is evidence in the record showing the serial number was "obliterated," i.e. materially changed in a way that made the serial number less accessible, the family court's factual findings are not clearly erroneous. See State v. Gordon , 414 S.C. at 98, 777 S.E.2d at 378 ("[A]n appellate court is bound by the trial court's factual findings unless they are clearly erroneous."). See In re John Doe , 318 S.C. at 534, 458 S.E.2d at 561 (stating this court must affirm an adjudication of delinquency unless it is unsupported by the evidence).
CONCLUSION
Based on the foregoing, the decision of the family court is
AFFIRMED.
THOMAS AND GEATHERS, JJ., concur.